# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff**<br>v.<br>**DANIEL RIOS,**<br>**Defendant** | **CASE NO. 1:16-cr-00096-AWI-SKO-3**<br><br>**ORDER ON MOTION FOR COMPASSIONATE RELEASE**<br><br>(Doc. Nos. 146 and 160) |

Defendant Daniel Rios ("Rios" or "Defendant") is currently serving a 120-month sentence in the custody of the Federal Bureau of Prisons ("BOP") for a drug-related offense. He brings a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on the grounds that he has elevated COVID-19 risk due to his age, ethnicity, gender and health conditions. For the reasons set forth below, the Court will deny the motion.

## **BACKGROUND**

Rios pleaded guilty on June 26, 2017 to conspiracy to distribute and possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 & 841(a)(1), Doc. Nos. 87 and 89, and was sentenced to a term of 120 months on September 18, 2017. Doc. Nos. 110 and 111.

Rios is currently serving his 120-month sentence in United States Penitentiary ("USP") Lompoc. Doc. No. 165-1. USP Lompoc is a medium security federal penitentiary in the Federal

Correctional Complex ("FCC") Lompoc.[1] The other facility in the FCC Lompoc complex is a low security facility called Federal Correctional Institution ("FCI") Lompoc.[2] Neither Rios nor the United States directly addresses the issue, but it appears there is a single warden for FCC Lompoc that oversees both USP Lompoc and FCI Lompoc.[3]

Rios's projected release date is January 4, 2025, based upon application of his Good Conduct Time ("GCT") credit. Doc. No. 165-1. He is 36 years old and has served just over half of his sentence. Id.

Rios filed a pro se motion for compassionate release on June 2, 2020, Doc. No. 146, and newly appointed counsel for Rios filed a supplemental brief in support of the June 2, 2020 motion on August 31, 2020. Doc. No. 160. The supplemental memorandum states that Rios submitted a petition for early release to his warden on April 28, 2020 and that he also "requested Compassionate Release via a BP-9 on July 27, 2020."[4] Doc. No. 160 at 14:1-4.[5] No declaration has been filed in connection with either of these assertions, and the Court does not see a copy of the July 27, 2020 BP-9 on the docket.

## **DEFENDANT'S MOTION**

*Defendant's Arguments*

Rios asserts that, as of August 30, 2020, there were 151 COVID-19 positive inmates and 90 pending COVID-19 tests at USP Lompoc, Doc. No. 160 at 6:9-12; that "physical distancing is impossible" because inmates "live and sleep in a group setting," id. at 11:5-19; and that he is at elevated risk of serious illness due to COVID-19 because he is Hispanic, obese, male and "older." Id. at 14:15-18, 20:14-17. He also states that he suffers from "hypertension" and "respiratory

---

[1] See Fed. Bureau of Prisons, USP Lompoc (available at https://www.bop.gov/locations/institutions/lom/ (last viewed Oct. 27, 2020)).

[2] See Fed. Bureau of Prisons, FCI Lompoc (available at https://www.bop.gov/locations/institutions/lof/ (last viewed Oct. 27, 2020)).

[3] See Office of the Inspector General, U.S. Dep't of Justice, Pandemic Response Report No. 20-086, Remote Inspection of Federal Correctional Complex Lompoc (July 2020) at 9 (referring to a "Complex Warden") (available at https://oig.justice.gov/sites/default/files/reports/20-086_0.pdf (last viewed Oct. 27, 2020)).

[4] A BP-9 is a form that can be used to submit requests for early release to the BOP. See United States v. Blinks, 2020 WL 5366728, at *2 (E.D. Cal. Sept. 8, 2020) (Ishii, J.) (citing Fed. Bureau of Prisons, U.S. Dep't of Justice, Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (Jan. 17, 2019)).

[5] Unless otherwise noted, page citations to docket entries are to the page numbers in the ECF file stamp at the top of each page.

health difficulties." Doc. No. 146 at 3. According to Rios, this "combination of circumstances provides a compelling reason for [his] immediate release" to home confinement or probation. Doc. No. 160 at 14:16-18; Doc. No. 146 at 12.

*United States' Opposition*

The United States argues that early release is unwarranted because Rios is just 36 years old and BOP medical records show that his only health condition is "slight obesity." Doc. No. 165 at 3:24-4:5. The United States acknowledges that "slight obesity involves an increased risk of severe illness for COVID-19," but asserts that "[s]everal courts have determined that obesity … does not by itself provide adequate grounds for compassionate release." Id. at 9:1-9. Further, the United States contends that "[t]he CDC does not recognize race and ethnic minority groups as a 'High-Risk' factor for serious illness resulting from COVID-19" and that conditions at FCC Lompoc (including the USP Lompoc facility in which Rios is incarcerated) have improved significantly (in terms of both infection rates and disease management capabilities) since a serious COVID-19 outbreak earlier this year. Id. at 5:9-20.

## LEGAL FRAMEWORK

A court may generally "not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); Dillon v. United States, 560 U.S. 817, 819 (2010). Criminal defendants may request compassionate release or sentence modifications, however, for "extraordinary and compelling reasons." United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020); United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020).

The statutory basis for compassionate release is set forth in 18 U.S.C. § 3582(c), which states in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>    (1) in any case—
>       (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without

conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 USCS § 3553(a)] to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction ....

18 U.S.C. § 3582(c)(1)(A)(i).

Before a defendant makes a request for compassionate release due to "extraordinary and compelling circumstances…defendants must at least ask the [BOP] to do so on their behalf and give BOP thirty days to respond." Raia, 954 F.3d at 595; see also, United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019) ("A defendant who has not 'requested compassionate release from the [BOP] or otherwise exhausted his administrative remedies' is not entitled to a reduction of his term of imprisonment."). The failure to exhaust administrative remedies as mandated by 18 U.S.C. § 3582(c)(1)(A) is a jurisdictional failure. See Gallo Cattle Co. v. U.S. Dept. of Agric., 159 F.3d 1194, 1197 (9th Cir. 1998); United States v. Greenlove, 2020 WL 3547069, at *3 (M.D. Pa. June 30, 2020); United States v. Howard, 2020 WL 3513938, at *2 (E.D. Cal. June 29, 2020) (Ishii, J.); United States v. Smith, 2020 WL 2487277, at *6 (E.D. Ark. May 14, 2020).

"The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction," United States v. Greenhut, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (citing United States v. Sprague, 135 F.3d 1301, 1306-07 (9th Cir. 1998)), and to show that the statutory exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) has been satisfied. See United States v. Addison, 2020 WL 4601637, at *2 (E.D. La. Aug. 11, 2020); United States v. Van Sickle, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020) (and cases cited therein).

## **DISCUSSION**

Upon review of relevant materials, the Court will deny the motion for two reasons.

First, the only evidence relating to the exhaustion of administrative remedies under 18 U.S.C. § 3582(c)(1)(A) is a copy of a letter from Rios to "The Warden at Federal Correction Institution (Lompoc)" dated April 28, 2020. Doc. No. 160-4. As noted above, the Court has satisfied itself that the warden of FCI Lompoc is the same as the warden for the facility in which

Rios is actually incarcerated—USP Lompoc—but there is nothing on the record authenticating the letter; no indication (mailing address, email address or fax number) as to where the letter was sent or how it was delivered; and no showing that the letter was received by the warden (let alone a showing as to the date of receipt). Moreover, the letter does not satisfy the substantive requirements for a 18 U.S.C. § 3582(c)(1)(A) request as set forth in 28 C.F.R. § 571.61(a), which expressly states that "[p]roposed release plans" must indicate not only "where the inmate will reside" but also "how the inmate will support himself" and how "the inmate will receive medical treatment" for the health conditions upon which the request for relief is predicated.

Similarly, there is no evidence at all as to the content or delivery of the BP-9 form that Rios supposedly submitted on July 27, 2020, and, even assuming the BP-9 was substantively sufficient, see 28 C.F.R. § 571.61(a), it could not have been received by Rios's warden until nearly two months after the instant motion was brought on June 2, 2020. See Doc. No. 146.

Therefore, Rios has not met his burden to show exhaustion of administrative remedies under 18 U.S.C. § 3582(c)(1)(A), see Addison, 2020 WL 4601637 at *2, and the Court lacks jurisdiction to hear the motion. See Gallo Cattle, 159 F.3d at 1197 ("statutorily-provided exhaustion requirements deprive the court of jurisdiction").

Second, even if Rios had exhausted administrative remedies under 18 U.S.C. § 3582(c)(1)(A), he has not demonstrated "extraordinary and compelling reasons" for early release. At 36, Rios is not in a high-risk age group.[6] The CDC has not identified race, ethnicity or gender as a significant COVID-19 risk factor separate and apart from other risk factors.[7] And Rios has no documented health conditions other than obesity, with a Body Mass Index ("BMI") of 34. Doc. No. 165-1 at 7, 14. The CDC states that people with a BMI of 30 or above are at increased

---

[6] See Centers for Disease Control and Prevention ("CDC"), Coronavirus Disease 2019 (COVID-19), Older Adults (available at www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last viewed Oct. 27, 2020)).

[7] See CDC, Coronavirus Disease 2019 (COVID-19), People at Increased Risk (available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/ (last viewed Oct. 27, 2020)); CDC, Coronavirus Disease 2019 (COVID-19), Health Equity Considerations & Racial & Ethnic Minority Groups (available at https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fracial-ethnic-minorities.html (last viewed Oct. 27, 2020)).

COVID-19 risk,[8] but the Court sees nothing in the briefing or on the CDC webpage quantifying the increased risk associated with a BMI of 34 or otherwise showing that it is great enough to justify the extraordinary relief Rios is seeking. See United States v. Pohahau, 2020 WL 4588522, at *4, n.5 (D. Haw. Aug. 7, 2020) ("Several courts have determined that obesity—alone or paired with hypertension—does not by itself provide adequate grounds for compassionate release.") (citing cases).

Moreover, it does not appear that there is presently a high risk of COVID-19 infection for any inmates at either Lompoc facility, regardless of personal risk factors. COVID-19 rates at FCC Lompoc were dangerously high earlier this year, see United States v. Purry, 2020 WL 2773477, at *1 (D. Nev. May 28, 2020), but according to the BOP's website, there no current prisoner cases at either USP Lompoc or FCI Lompoc and only 4 staff at USP Lompoc and 3 staff at FCI Lompoc are positive at this point in time.[9] Similarly, it appears that FCC Lompoc has made significant improvements in its prevention and treatment protocols over the past several months and is now properly equipped—in a way that it previously was not—to manage new COVID-19 cases effectively. Doc. No. 165 at 5:22-28.

Given these considerations, the Court will deny Rios's motion for compassionate release without prejudice.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Daniel Rios's motion for compassionate release (Doc. Nos. 146 and 160) is DENIED without prejudice.

IT IS SO ORDERED.

Dated:   October 29, 2020                          _____
                                                    SENIOR DISTRICT JUDGE

---

[8] See CDC, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions (available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (last viewed Oct. 27, 2020)).

[9] See Fed. Bureau of Prisons, COVID-19 Coronavirus (available at https://www.bop.gov/coronavirus/ (last viewed Oct. 27, 2020)).